**DISTRICT OF COLUMBIA, Appellant,**

v.

**Richard R. CLARK, Appellee.**

**No. 82–1645.**

District of Columbia Court of Appeals.

Argued Sept. 21, 1983.

Decided Nov. 17, 1983.

---

Richard B. Nettler, Asst. Corp. Counsel, with whom Judith W. Rogers, Corporation Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on briefs, for appellant.

Melvin J. Washington, Washington, D.C., for appellee.

Before KERN, PRYOR and TERRY, Associate Judges.

KERN, Associate Judge:

This is an interlocutory appeal under D.C. Code § 23–104 (1981), from a pretrial order suppressing incriminating statements made by the appellee, Mr. Clark, at the time of his arrest for suspected drunken driving, as well as the results of two breathalyzer tests obtained after his arrest. The court rested its suppression order on the manner in which the court found appellee was treated during his arrest. He was arrested for operating a motor vehicle while under the influence of an intoxicating liquor and for driving recklessly in violation of D.C.Code §§ 40–716(b) and –712(b) (1981), respectively. The District of Columbia, appellant here, challenges the trial court's ruling insofar as it suppressed the two breath tests made upon appellee. However, the District does not contest the court's finding that the statements made by appellee to the arresting officer must be suppressed because they were coerced and made without Miranda[1] warnings having been given.

The trial court heard the testimony of the arresting officer, the officer who conducted the two breath tests about an hour after the arrest, and appellee. The judge credited appellee's version of the details of his arrest, finding that: "Officer Finck [the arresting officer] forced him [appellee] out of the car, ... threw him against the car, ... forcibly handcuffed him at gun point and threw him in the back of the police car.... Officer Finck did not follow appropriate police procedures and Officer Finck did not give appropriate warnings to this gentleman." (Record at 154.)

Officer Finck claimed in his testimony that the arrest followed a twenty-five minute chase. The trial court found that "even assuming that the chase occurred, I am prepared to believe that Officer Finck's arrest procedure was inappropriate and improper." (Record at 154.) According to the court, "in the circumstances ... nothing that happened in Officer Finck's automobile can be said to be voluntary in light of the way ... Mr. Clark was treated." (Record

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

at 154–55.) As noted above, the District does not challenge this finding nor the court's ruling his incriminating statement in the police car should be suppressed.

As to the breath tests, appellee waited in the police cruiser for about thirty minutes before the alcohol test van arrived. (Record at 127.) Then appellee was transferred to the van, which was operated by two officers and also present that night was an observer from another jurisdiction. (Record at 130.) Appellee was promptly warned of his *Miranda* rights and his rights under the Implied Consent Act, D.C.Code §§ 40–501–07 (1981). (Record at 107.) The arresting officer, Officer Finck, was in and out of the van, but was not present when appellee was read his rights. (Record at 146.) Appellee testified that he consented to the tests because, "I was in a hurry to get home.... [T]he man had pointed a gun at me.... That gun could have easily triggered and gone off, I would have been dead, you could conduct an internal investigation, he would be cleared.... Now I felt as though not only my civil rights, my human rights as a person had been violated. I would have done anything, I would have signed anything, waiving all my rights for that gun." (Record at 134–35.)

The court found that "had it not been for the circumstances of Officer Finck's testimony, the procedure in the alcohol van was reasonably sufficient ... to advise the defendant of his rights. However, ... the key point is voluntary. I believe that there was not sufficient separation from the time of Officer Finck's actions, which I find reprehensible, to the time this gentleman was placed in the van .... [N]otwithstanding the fact that he probably knew his rights, ... he was nonetheless frightened and wished to leave." (Record at 155).

The Corporation Counsel directs our attention to the District of Columbia Implied Consent Act, D.C.Code §§ 40–501–07 (1981), enacted by Congress in 1972, which provides that any person operating a motor vehicle within the District of Columbia is deemed to have consented to two chemical tests for the purpose of determining blood-alcohol content—assuming that the police officer has reasonable grounds to believe that the person has been driving under the influence of intoxicating liquor. D.C.Code § 40–502(a) (1981). Thus, appellee's operation of his automobile on the night in question constituted his implied consent to undergo tests upon being arrested for driving under the influence.

This court recently discussed the Implied Consent Act in *District of Columbia v. McConnell*, 464 A.2d 126 (D.C.1983). We noted that prior to the 1972 legislation, the District of Columbia Code required the express consent of the accused before a test was administered. Now, under the Implied Consent Act, the operator arrested for driving while under the influence no longer has an unqualified right to refuse to submit to a breathalyzer test. Instead, he has a choice between submitting to the test and facing the probability that it will be used as evidence against him in an administrative or criminal proceeding, or refusing to submit to the test and facing immediate revocation of his drivers license for six months. In addition, his refusal can be used as evidence against him. *Id.* at 131.

Here, the trial court suppressed the test results because the judge found that appellee did not *voluntarily* submit to the two breath tests conducted after his arrest, but was coerced by the violent action of the arresting officer in effecting his arrest. However, we do not agree that the appropriate test in the instant case is whether appellee *voluntarily* waived his right to refuse to take the test by the standard of proof set forth in *Miranda.* Significantly, in *District of Columbia v. McConnell, supra,* we ruled that the option to refuse to submit to the breath test is not a "right" in the sense of a fundamental personal privilege. *Id.* at 131. Also, the Supreme Court recently reviewed the "implied consent laws" in *South Dakota v. Neville*, —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The Court noted that clearly a state can force a person suspected of driving while intoxicated to

submit to a blood-alcohol test. *Id.* at 921. The right to refuse to take the test, in contrast to the right to silence underlying the *Miranda* warnings given to persons arrested which is of constitutional dimension, is simply a grace bestowed by the legislature. *Id.* at 923–24. Thus, a defendant's refusal to take a test can be used against him at trial even though he was not so warned. *Id.* at 924. According to the Court, the option to refuse the test is simply a means provided by the state of avoiding violent confrontations. *Id.* at 921.

We further note that in *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), the Supreme Court rejected the notion that the administration of a chemical test, even without conscious consent (for in this case the defendant was unconscious), offended the "sense of justice" or "shocked the conscience." *Id.* at 437, 77 S.Ct. at 411. In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the defendant refused to consent to the test and the Court ruled that a state can force a person suspected of driving while intoxicated to submit to an examination. Accordingly, as we read *Schmerber,* it does not matter, in the due process analysis, if one objects, resorts to physical violence in protest or is in such a condition that he is unable to protest. However, it is important to note that due process concerns are raised if the police initiated violence while administering the test, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force. *Id.* at 760, 86 S.Ct. at 1830. *South Dakota v. Neville,* 103 S.Ct. at 921, n. 9.

Thus, the trial court's use of the voluntary standard with regard to appellee's consent to take the test is inapposite. Instead, the issue is whether the circumstances surrounding the administration of the breath test in this case implicate due process concerns under the rationale of *Schmerber v. California, supra,* and *South Dakota v. Neville, supra.*

The first concern is whether the police initiated physical violence while administering the test. Here, the court found that appellee had been arrested with undue physical force, but found nothing inappropriate about the administration of the test some time later. We note that the test was administered about an hour later by another officer, in a separate setting and after appellee had been informed of his rights. Therefore, the physical violence of the *arresting* officer was not part of the subsequent administration of the breath test by the officer who arrived on the scene in the test van.

The second concern is whether the police refused to respect a reasonable request to undergo a different form of testing.[2] Appellee argues that the officer refused to honor his request for a urine test. The officer denies that appellee made any specific request as to the type of test. (Record at 110.) The record reflects that appellee read, understood and signed the implied consent form. (Record at 133.) The form explains the option under the Act to select the preferred chemical test, and clearly provides a space on the form for a suspect to designate his choice, but nothing on the form signed by appellee indicates that he made any kind of selection. (Record at 196.) Moreover, on cross examination, appellee acknowledged that he did not object at any time to taking the breath tests. (Record at 152.) Thus, we agree with the District that the trial court's finding that the procedures in the van were proper constitutes a finding also that the testing authorities did not refuse to honor a reasonable request to undergo a different form of testing.

The third due process concern arises if the testing authorities respond to resistance

---

**2.** We note in passing that the Implied Consent Act has been amended so that now the appropriate law enforcement officer administering the test elects which chemical test shall be administered to the suspect. The suspect may object on valid religious or medical grounds. D.C.Code § 40–502(a) (1983 Supp.).

on the part of the person tested with inappropriate force. Appellee testified that he did not object to the test (Record at 152), and there is no evidence that appellee offered any resistance. Thus, there could not be a finding that the police administering the test applied inappropriate force, which would have rendered the test impermissible under the rationale of *Schmerber v. California, supra,* and *South Dakota v. Neville, supra.*

We are persuaded under the circumstances surrounding the administration of the breath test in this case that due process concerns were not implicated and that the court erred in concluding the conduct of the arresting officer in effecting the arrest tainted appellee's consent to the administration of the test almost one hour later by officers not involved in the arrest.[3] Accordingly, that part of the order of the trial court suppressing the results of the two breath tests is reversed and the case remanded for further proceedings.

*So ordered.*

---

**3.** We arrive at one hour by adding the thirty-five minutes appellee waited in the police cruiser for the alcohol test van to arrive on the scene (Record at 127) and the additional twenty minutes in the van during which time the testing officer observed appellee. (Record at 118.)