**UNITED STATES of America, Appellee,**

v.

**Rachel L. BOUKNIGHT, Appellant.**

**No. 86–5518.**

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1986.
Decided Sept. 15, 1986.

Richard J. McCue, for appellant.

Constance Wynn, Asst. U.S. Atty., (Justin W. Williams, U.S. Atty. and James M. Sullivan, Sp. Asst. U.S. Atty. on brief) for appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Rachel L. Bouknight was found guilty by a jury of embezzling funds of the United States Postal Service in violation of 18 U.S.C. § 1711. She appeals that conviction, contending that there is insufficient evidence to support the guilty verdict. We agree with her contention, and accordingly reverse the conviction.

I.

Bouknight began working for the Postal Service in 1966.[1] In November, 1984, she was relocated to serve as a window clerk at the Pentagon Post Office. In that capacity, Bouknight was issued and held accountable for a supply of money, stamps, and other items. She kept this stock in three drawers and two stamp cabinets, which also were issued to her. In accordance with Postal Service procedure, Bouknight was given one set of keys to the locks on the drawers and cabinets, and a second set supposedly was kept in a sealed envelope locked in a safe.

In April, 1985, upon a routine audit by a postal inspector, Bouknight's stock was short by a sum of $2,377.69. Previously, Bouknight had had small sum shortages, averaging $19.35. Her largest deficit, $408.32, occurred after her first audit in 1971.

At trial, Bouknight denied that she had taken the money. She testified that she had occasionally left the drawers unlocked and unattended while running job-related errands.

Other evidence showed that despite a Postal Service policy that all locks are to be

---

1. As of the trial in December, 1985, Bouknight was earning a $26,000.00 annual salary and had accumulated $17,000.00 in retirement pay. Jt. App. at 74–75.

changed when drawers and cabinets are assigned from one employee to another, the locks on the storage containers issued to Bouknight were not changed when she began her employment at the Pentagon Post Office. In addition, the second key to Bouknight's cash drawer, which should have been in a sealed envelope in the locked safe, was missing.

There was no direct evidence that anyone else had a key to Bouknight's drawers, nor was anyone ever seen entering Bouknight's storage area. However, no lock and key examination had been conducted to insure that other employees' keys would not open Bouknight's cash and stock drawers.[2]

## II.

Bouknight argues on appeal that the evidence was insufficient[3] to convict her.[4] The government, relying principally on *United States v. Powell,* 413 F.2d 1037 (4th Cir.1969), claims that there is substantial evidence herein to sustain the conviction.

This court held in *Powell:*

Where, as here, the defendant alone has access to the property, a substantial shortage is disclosed, and no explanation of the shortage is tendered by the accused, the trier of fact may reasonably infer from the circumstances that the custodian of the property has embezzled the missing funds.

*Id.* at 1038. We agree with the government that the shortage herein was substantial. Powell's deficit was $1,393.56; Bouknight's was $2,377.69. Indeed, her previous average shortage was only $19.35, with the highest individual deficit being $408.32. We do not agree, however, that there is sufficient evidence to show that Bouknight had sole access to her drawers and cabinets.

Unlike *Powell,* this case involves a missing key to defendant's cash drawer. The second key to Powell's drawer was secured in a safe. *Powell,* 413 F.2d at 1038. No one knows where the second key to Bouknight's cash drawer is located. The Postal Service has not conducted a lock and key examination while Bouknight has been employed at the Pentagon Post Office. Thus, another employee may have that missing key; or, as the locks were not changed when Bouknight was issued the drawers and cabinets, another person (i.e., Bouknight's predecessor) may have duplicate keys to some or all of Bouknight's storage containers. Finally, Bouknight testified that she occasionally left her drawers unlocked and unattended while she ran errands.

These facts distinguish the instant case from *Powell.* That distinction is further buttressed by the explanation of the shortage tendered by Bouknight. Powell offered no excuse for the deficit therein.[5] Bouknight unequivocally denied taking the funds and contends, as discussed above, that someone else either has a key to her drawer(s) or entered the storage containers when Bouknight left them unattended and unlocked. Both explanations are plausible under the facts herein.

In sum, because the evidence is insufficient to show that Bouknight had sole access to the storage area, and Bouknight has tendered plausible explanations for the shortage, the jury verdict cannot be sustained. Accordingly, we reverse Bouknight's conviction.

REVERSED.

---

**2.** Postal Service procedure requires that a yearly key check occur to determine whether a clerk's keys will open another's storage area. This was not done during Bouknight's employment at the Pentagon Post Office.

**3.** "The standard of sufficiency is that there must be 'substantial evidence, taking the view most favorable to the Government, to support [the jury verdict].'" *United States v. Samad,* 754 F.2d 1091, 1096 (4th Cir.1984) (quoting *Glasser*

*v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ).

**4.** Bouknight also challenges a jury instruction. Because of our conclusion that the conviction is not supported by substantial evidence, we do not address this assignment of error.

**5.** Powell merely denied using the funds for his personal use. *See United States v. Powell,* 294 F.Supp. 1353, 1355 (E.D.Va.1968).