989 F.2d 495
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jeffery D. BURRELL; Michael D. Shuler, Defendants-Appellants.
 No. 92-5223.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: February 11, 1993
Decided: March 17, 1993
 
 Appeal from the United States District Court for the Western District of North Carolina, at Bryson City. Richard L. Voorhees, Chief District Judge. (CR-91-175-B, CR-91-176-B)
 Russell L. McLean, III, MCLEAN & DICKSON, Waynesville, North Carolina, for Appellants.
 Thomas J. Ashcraft, United States Attorney, Thomas R. Ascik, Assistant United States Attorney, Asheville, North Carolina, for Appellee.
 W.D.N.C.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Jeffrey D. Burrell appeals his conviction for removing and possessing plant material in violation of 36 C.F.R. § 2.1(a)(1)(ii) (1991). Michael D. Shuler appeals his conviction for failing to obey a lawful order of a park ranger in violation of 36 C.F.R.s 2.32(a)(2) (1991). Both Defendants argue that they were entitled to a jury trial and that there was insufficient evidence to find each guilty of the charged offenses. We find that Burrell and Shuler were charged with petty offenses and were, therefore, not entitled to a jury trial. We also find sufficient evidence that Shuler failed to obey a lawful order. Therefore, we affirm his conviction. However, because we find the evidence insufficient to show that Burrell removed ginseng from a national park, we reverse his conviction.
 
 I.
 
 2
 The evidence at the bench trial showed that on October 11, 1991, rangers of the National Park Service discovered human footprints near an area in the Great Smokey Mountain National Park ("Park") that had been freshly dug for ginseng.[1] On October 12, rangers Patton and Monihan set up surveillance of that portion of the Park to watch for further illegal harvesting of ginseng. Later that day, Patton and Monihan observed Burrell and Shuler walking from the interior of the park, carrying sticks that had been altered for the purpose of digging up ginseng. Patton ordered the two men to "stop." Shuler fell to the ground, but Burrell fled; consequently, Patton pursued Burrell. Shuler also fled before Monihan could apprehend him. Patton apprehended Burrell within the boundaries of the Park and found forty ginseng roots sticking out of his vest pocket. After returning to the original surveillance site, Patton radioed a third ranger, Garrison, to inform him of the direction of Shuler's flight. Garrison later apprehended Shuler. No evidence was admitted showing that any ginseng was harvested from the Park on October 12.
 
 
 3
 Burrell testified that he and Shuler had permission to dig ginseng on Jack Laws's private property. Laws's property was adjacent to the Park. Furthermore, Burrell testified that the ginseng had in fact been taken from that property, and not from the Park. Jack Laws confirmed that Burrell had permission to harvest ginseng on his property. The district court held that Burrell possessed ginseng within the boundaries of the Park and that Shuler failed to obey a lawful order.
 
 II.
 
 4
 Shuler and Burrell argue that they were entitled to a jury trial because the potential exposure of risk was six-months imprisonment and a $5,000 fine.
 
 
 5
 The maximum penalty stated in the regulation is six-months imprisonment, $500 fine, or both. 36 C.F.R. § 1.3 (1991). Historically, an offense with such a maximum penalty has been considered a petty offense, for which there was no constitutional right to a jury trial. See Muniz v. Hoffman, 422 U.S. 454, 476-77 (1975); Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 128 (4th Cir. 1977). However, the charged offenses are misdemeanors, as defined by 18 U.S.C. §§ 3559, 3581 (1988), and are thus subject to an amended maximum fine of $5,000. Burrell and Shuler argue that the $5,000 fine makes these offenses serious enough to warrant a jury trial. We disagree.
 
 
 6
 We do not believe that $5,000 is an insignificant burden. However, the amount of the fine is not necessarily determinative of the right to a jury trial. Muniz, 422 U.S. at 477. More importantly, where the maximum prison term is no higher than six months, the offense is presumed to be petty despite additional penalties. Blanton v. City of North Las Vegas, 489 U.S. 538, 543 (1989). The only means to overcome this presumption is to show that any additional penalties "viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." Id. The additional penalty of a $5,000 fine does not overcome the Blanton presumption. See United States v. LaValley, 957 F.2d 1309 (6th Cir.), cert. denied, 61 U.S.L.W. 3354 (1992); United States v. Musser, 873 F.2d 1513 (D.C. Cir.), cert. denied, 493 U.S. 983 (1989). Therefore, a jury trial was properly denied in this case.
 
 III.
 
 7
 In viewing the evidence in the light most favorable to the government to determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982), and according the benefit of all reasonable inferences to the government, Tresvant, 677 F.2d at 1021, we find sufficient evidence that Shuler failed to obey a lawful order. Patton testified that when he shouted, "Stop, park ranger," Shuler fell to the ground. However, Monihan testified that Shuler fell to the ground because he tripped over some tree roots. Monihan further testified that "[a]s he went down, I started grabbing towards him. I fell down also. He got up and ran down towards the east, towards Lands Creek drainage." Taking all inferences in favor of the government, Tresvant, 677 F.2d at 1021, we find this evidence sufficient to prove that Shuler failed to obey a lawful order.
 
 IV.
 
 8
 Burrell argues that there was not any evidence that he dug ginseng within the boundaries of the Park; therefore, there was insufficient evidence to convict him of removing and possessing a natural feature from a national park. At trial, the government argued, that even if there was not sufficient evidence that Burrell removed the ginseng from the Park, the mere possession of ginseng on the Park was a violation of the regulation. We conclude that a person cannot violate 36 C.F.R. § 2.1(a)(1)(ii) (1991) by merely possessing a natural feature on a national park. Therefore, we reverse.
 
 
 9
 The regulation Burrell is alleged to have violated reads, in pertinent part:
 
 
 10
 (a) Except as otherwise provided in this chapter, the following is prohibited:
 
 
 11
 (1) Possession, destroying, injuring, defacing, removing, digging, or disturbing from its natural state:
 
 
 12
 (i) Living or dead wildlife or fish, or the parts or products thereof, such as antlers or nests.
 
 
 13
 (ii) Plants or the parts or products thereof.
 
 
 14
 (iii) Nonfossilized and fossilized paleontological specimens, cultural or archeological resources, or the parts thereof.
 
 
 15
 (iv) A mineral resource or cave formation or the parts thereof.
 
 
 16
 36 C.F.R. § 2.1 (1991).
 
 
 17
 We find implicit in the regulation a requirement that the natural feature be removed (physically harvested) from park land. Such a requirement is necessary in order to limit the scope of the National Park Service's regulations to park-related activities.[2] Although the literal language of the regulation suggests that mere possession of a natural feature is prohibited, the statute should not be interpreted so narrowly given the absurd result[3] of the interpretation. See United States v. Mitchell, 877 F.2d 294, 300 (4th Cir. 1989). Therefore, the most logical interpretation, and the interpretation most consistent with the National Park Service's regulatory scheme, is that mere possession of a natural feature does not violate the regulation; the natural feature must be removed from the Park (physically harvested from park land).[4]
 
 
 18
 Given this construction of the regulation, we find that a rational trier of fact could not have found that Burrell harvested the ginseng from the Park. Although Patton found forty ginseng roots sticking out of Burrell's vest pocket, there was no evidence that ginseng had been harvested from the Park on October 12. The evidence is "too slim a reed upon which to base a criminal conviction." United States v. Samad, 754 F.2d 1091, 1099 (4th Cir. 1984). Furthermore, Burrell proffered a plausible explanation that he harvested the ginseng from Jack Laws's nearby property and Laws testified that he had given Burrell and Shuler permission to remove ginseng from his property. In sum, given the government's lack of affirmative evidence and Burrell's plausible (and not refuted) explanation, we find insufficient evidence to convict Burrell. See United States v. Bouknight, 800 F. 2d 432, 433 (4th Cir. 1986).
 
 V.
 
 19
 In conclusion, Burrell and Shuler were charged with petty offenses as defined by the statutory provision of 18 U.S.C.s 19, and were not entitled to a trial by jury. Because we find there was sufficient evi dence that Shuler failed to obey a lawful order, we affirm Shuler's conviction. However, because we find the evidence is insufficient to show that Burrell harvested ginseng from a national park and Burrell proffered a plausible explanation of how he obtained the ginseng found on his person, the verdict cannot be sustained. Accordingly, we reverse Burrell's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid the decisional process.
 
 AFFIRMED IN PART AND REVERSED IN PART
 
 
 [1]
 Ginseng is a herb which sells for as much as $240 per pound
 
 
 [2]
 The application and scope section of the regulations reads, in pertinent part: "The regulations contained in this chapter apply to all persons entering, using, visiting or otherwise within: (1) The boundaries of federally owned lands and waters administered by or subject to the jurisdiction of the National Park Service; ... " 36 C.F.R.s 1.2(a)(1) (1991)
 
 
 [3]
 Is an individual prohibited from eating a salad on park land? Does the regulation prohibit the grilling of store-bought flounder on park land?
 
 
 [4]
 The rule of lenity supports such an interpretation. Doubts about the extent of the prohibited activity in a criminal prosecution should be resolved in the defendant's favor. See Liparota v. United States, 471 U.S. 419, 427 (1985); United States v. Bass, 404 U.S. 336, 347-348 (1971)