# BLANTON ET AL. *v.* CITY OF NORTH LAS VEGAS, NEVADA

No. 87–1437.  ·Argued January 9, 1989—Decided March 6, 1989

MARSHALL, J., delivered the opinion for a unanimous Court.

*John J. Graves, Jr.*, argued the cause for petitioners. With him on the briefs was *John G. Watkins.*

*Mark L. Zalaoras* argued the cause for respondent. With him on the brief was *Roy A. Woofter.** 

JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is whether there is a constitutional right to a trial by jury for persons charged under Nevada law with driving under the influence of alcohol (DUI). Nev. Rev. Stat. § 484.379(1) (1987). We hold that there is not.

DUI is punishable by a minimum term of two days' imprisonment and a maximum term of six months' imprisonment. § 484.3792(1)(a)(2). Alternatively, a trial court may order the defendant "to perform 48 hours of work for the community while dressed in distinctive garb which identifies him as [a DUI offender]." *Ibid.* The defendant also must pay a fine ranging from $200 to $1,000. § 484.3792(1)(a)(3). In addition, the defendant automatically loses his driver's license for 90 days, § 483.460(1)(c),[1] and he must attend, at his own

---

*Dan C. Bowen* and *John A. Powell* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the United States by *Solicitor General Fried, Acting Assistant Attorney General Dennis, Deputy Solicitor General Bryson, Michael R. Lazerwitz,* and *Louis M. Fischer;* for the State of Nevada by *Brian McKay,* Attorney General, and *Brian Randall Hutchins,* Chief Deputy Attorney General; for the State of New Jersey by *W. Cary Edwards,* Attorney General, and *Boris Moczula, Larry R. Etzweiler,* and *Cherrie Madden Black,* Deputy Attorneys General; for the city of Las Vegas, Nevada, by *George F. Ogilvie;* and for the Louisiana District Attorneys Association by *Dorothy A. Pendergast.*

[1] A restricted license may be issued after 45 days which permits the defendant to travel to and from work, to obtain food and medicine, and to receive regularly scheduled medical care. § 483.490(2).

expense, an alcohol abuse education course. § 484.3792(1)
(a)(1). Repeat DUI offenders are subject to increased
penalties.[2]

Petitioners Melvin R. Blanton and Mark D. Fraley were
charged with DUI in separate incidents. Neither petitioner
had a prior DUI conviction. The North Las Vegas, Nevada,
Municipal Court denied their respective pretrial demands for
a jury trial. On appeal, the Eighth Judicial District Court
denied Blanton's request for a jury trial but, a month later,
granted Fraley's. Blanton then appealed to the Supreme
Court of Nevada, as did respondent city of North Las
Vegas with respect to Fraley. After consolidating the two
cases along with several others raising the same issue, the
Supreme Court concluded, *inter alia*, that the Federal Con-
stitution does not guarantee a right to a jury trial for a DUI
offense because the maximum term of incarceration is only
six months and the maximum possible fine is $1,000. 103
Nev. 623, 748 P. 2d 494 (1987).[3] We granted certiorari to
consider whether petitioners were entitled to a jury trial, 487
U. S. 1203 (1988), and now affirm.

---

[2] A second DUI offense is punishable by 10 days to six months in prison.
§ 484.3792(1)(b). The second-time offender also must pay a fine ranging
from $500 to $1,000, *ibid.*, and he loses his driver's license for one year.
§ 483.460(1)(b)(5). A third DUI offense is punishable by a minimum term
of one year's imprisonment and a maximum term of six years' imprison-
ment. § 484.3792(1)(c). The third-time offender also must pay from
$2,000 to $5,000, *ibid.*, and he loses his driving privileges for three years.
§ 483.460(1)(a)(2).

A prosecutor may not dismiss a DUI charge "in exchange for a plea of
guilty or nolo contendere to a lesser charge or for any other reason unless
he knows or it is obvious" that there is insufficient evidence to prove the
offense. § 484.3792(3). Trial courts may not suspend sentences or impose
probation for DUI convictions. *Ibid.*

[3] Accordingly, the Supreme Court of Nevada remanded Blanton's case
with instructions to proceed without a jury trial. Because Fraley pleaded
guilty to DUI before he took an appeal to the District Court, the Supreme
Court remanded his case with instructions to reinstate his conviction.

It has long been settled that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Duncan* v. *Louisiana*, 391 U. S. 145, 159 (1968); see also *District of Columbia* v. *Clawans*, 300 U. S. 617, 624 (1937); *Callan* v. *Wilson*, 127 U. S. 540, 557 (1888).[4] In determining whether a particular offense should be categorized as "petty," our early decisions focused on the nature of the offense and on whether it was triable by a jury at common law. See, *e. g.*, *District of Columbia* v. *Colts*, 282 U. S. 63, 73 (1930); *Callan, supra*, at 555–557. In recent years, however, we have sought more "objective indications of the seriousness with which society regards the offense." *Frank* v. *United States*, 395 U. S. 147, 148 (1969).[5] "[W]e have found the most relevant such criteria in the severity of the maximum authorized penalty." *Baldwin* v. *New York*, 399 U. S. 66, 68 (1970) (plurality opinion); see also *Duncan, supra*, at 159. In fixing the maximum penalty for a crime, a legislature "include[s] within the definition of the crime itself a judgment about the seriousness of the offense." *Frank, supra*, at 149. The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is "far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the

---

[4] The Sixth Amendment right to a jury trial applies to the States through the Fourteenth Amendment. *Duncan* v. *Louisiana*, 391 U. S. 145 (1968).

[5] Our decision to move away from inquiries into such matters as the nature of the offense when determining a defendant's right to a jury trial was presaged in *District of Columbia* v. *Clawans*, 300 U. S. 617, 628 (1937), where we stated: "Doubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments." Our adherence to a common-law approach has been undermined by the substantial number of statutory offenses lacking common-law antecedents. See *Landry* v. *Hoepfner*, 840 F. 2d 1201, 1209–1210 (CA5 1988) (en banc), cert. pending, No. 88–5043; *United States* v. *Woods*, 450 F. Supp. 1335, 1345 (Md. 1978); Brief for United States as *Amicus Curiae* 18.

recognition and correction of their misperceptions in this respect." *Landry* v. *Hoepfner*, 840 F. 2d 1201, 1209 (CA5 1988) (en banc), cert. pending, No. 88–5043.

In using the word "penalty," we do not refer solely to the maximum prison term authorized for a particular offense. A legislature's view of the seriousness of an offense also is reflected in the other penalties that it attaches to the offense. See *United States* v. *Jenkins*, 780 F. 2d 472, 474, and n. 3 (CA4), cert. denied, 476 U. S. 1161 (1986). We thus examine "whether the length of the authorized prison term *or the seriousness of other punishment* is enough in itself to require a jury trial." *Duncan, supra,* at 161 (emphasis added); see also *Frank*, 395 U. S., at 152 (three years' probation is not "onerous enough to make an otherwise petty offense 'serious'").[6] Primary emphasis, however, must be placed on the maximum authorized period of incarceration. Penalties such as probation or a fine may engender "a significant infringement of personal freedom," *id.*, at 151, but they cannot approximate in severity the loss of liberty that a prison term entails. Indeed, because incarceration is an "intrinsically different" form of punishment, *Muniz* v. *Hoffman*, 422 U. S. 454, 477 (1975), it is the most powerful indication of whether an offense is "serious."

Following this approach, our decision in *Baldwin* established that a defendant is entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term of greater than six months. 399 U. S., at 69; see *id.*, at 74–76 (Black, J., concurring in judgment). The possibility of a sentence exceeding six months, we determined, is "sufficiently severe by itself" to require the opportunity for a jury trial. *Id.*, at 69, n. 6. As for a prison term of six months or less, we recognized that it will seldom be viewed by the defendant as "trivial or 'petty.'" *Id.*, at 73. But we

---

[6] In criminal contempt prosecutions, "where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense." *Frank*, 395 U. S. at, 149.

found that the disadvantages of such a sentence, "onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications." *Ibid.*; see also *Duncan, supra,* at 160.

Although we did not hold in *Baldwin* that an offense carrying a maximum prison term of six months or less automatically qualifies as a "petty" offense,[7] and decline to do so today, we do find it appropriate to presume for purposes of the Sixth Amendment that society views such an offense as "petty." A defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one. This standard, albeit somewhat imprecise, should ensure the availability of a jury trial in the rare situation where a legislature packs an offense it deems "serious" with onerous penalties that nonetheless "do not puncture the 6-month incarceration line." Brief for Petitioners 16.[8]

Applying these principles here, it is apparent that petitioners are not entitled to a jury trial. The maximum authorized prison sentence for first-time DUI offenders does not exceed six months. A presumption therefore exists that the Nevada Legislature views DUI as a "petty" offense for purposes

---

[7] We held "*only* that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty.'" *Baldwin* v. *New York,* 399 U. S., at 69, n. 6 (plurality opinion) (emphasis added); see also *Codispoti* v. *Pennsylvania,* 418 U. S. 506, 512, n. 4 (1974).

[8] In performing this analysis, only penalties resulting from state action, *e. g.,* those mandated by statute or regulation, should be considered. See Note, The Federal Constitutional Right to Trial by Jury for the Offense of Driving While Intoxicated, 73 Minn. L. Rev. 122, 149–150 (1988) (nonstatutory consequences of a conviction "are speculative in nature, because courts cannot determine with any consistency when and if they will occur, especially in the context of society's continually shifting moral values").

of the Sixth Amendment. Considering the additional statutory penalties as well, we do not believe that the Nevada Legislature has clearly indicated that DUI is a "serious" offense.

In the first place, it is immaterial that a first-time DUI offender may face a minimum term of imprisonment. In settling on six months' imprisonment as the constitutional demarcation point, we have assumed that a defendant convicted of the offense in question would receive the *maximum* authorized prison sentence. It is not constitutionally determinative, therefore, that a particular defendant may be required to serve some amount of jail time *less* than six months. Likewise, it is of little moment that a defendant may receive the maximum prison term because of the prohibitions on plea bargaining and probation. As for the 90-day license suspension, it, too, will be irrelevant if it runs concurrently with the prison sentence, which we assume for present purposes to be the maximum of six months.[9]

We are also unpersuaded by the fact that, instead of a prison sentence, a DUI offender may be ordered to perform 48 hours of community service dressed in clothing identifying him as a DUI offender. Even assuming the outfit is the source of some embarrassment during the 48-hour period,[10] such a penalty will be less embarrassing and less onerous than six months in jail. As for the possible $1,000 fine, it is well below the $5,000 level set by Congress in its most recent definition of a "petty" offense, 18 U. S. C. § 1 (1982 ed.,

---

[9] It is unclear whether the license suspension and prison sentence in fact run concurrently. See Nev. Rev. Stat. § 483.460(1) (1987). But even if they do not, we cannot say that a 90-day license suspension is that significant as a Sixth Amendment matter, particularly when a restricted license may be obtained after only 45 days. Cf. *Frank* v. *United States*, *supra*. Furthermore, the requirement that an offender attend an alcohol abuse education course can only be described as *de minimis*.

[10] We are hampered in our review of the clothing requirement because the record from the state courts contains neither a description of the clothing nor any details as to where and when it must be worn.

Supp. IV), and petitioners do not suggest that this congressional figure is out of step with state practice for offenses carrying prison sentences of six months or less.[11] Finally, we ascribe little significance to the fact that a DUI offender faces increased penalties for repeat offenses. Recidivist penalties of the magnitude imposed for DUI are commonplace and, in any event, petitioners do not face such penalties here.[12]

Viewed together, the statutory penalties are not so severe that DUI must be deemed a "serious" offense for purposes of the Sixth Amendment. It was not error, therefore, to deny petitioners jury trials. Accordingly, the judgment of the Supreme Court of Nevada is

*Affirmed.*

---

[11] We have frequently looked to the federal classification scheme in determining when a jury trial must be provided. See, *e. g., Muniz* v. *Hoffman,* 422 U. S. 454, 476–477 (1975); *Baldwin, supra,* at 71; *Duncan,* 391 U. S., at 161. Although Congress no longer characterizes offenses as "petty," 98 Stat. 2027, 2031, 99 Stat. 1728 (repealing 18 U. S. C. § 1), under the current scheme, 18 U. S. C. § 3559 (1982 ed., Supp. V), an individual facing a maximum prison sentence of six months or less remains subject to a maximum fine of no more than $5,000. 18 U. S. C. § 3571(b)(6) (1982 ed., Supp. V).

We decline petitioners' invitation to survey the statutory penalties for drunken driving in other States. The question is not whether other States consider drunken driving a "serious" offense, but whether Nevada does. Cf. *Martin* v. *Ohio,* 480 U. S. 228, 236 (1987). Although we looked to state practice in our past decisions, we did so chiefly to determine whether there was a nationwide consensus on the potential term of imprisonment or amount of fine that triggered a jury trial regardless of the particular offense involved. See, *e. g., Baldwin, supra,* at 70–73; *Duncan, supra,* at 161.

[12] In light of petitioners' status as first-time offenders, we do not consider whether a repeat offender facing enhanced penalties may state a constitutional claim because of the absence of a jury trial in a prior DUI prosecution.