**Tony Alonzo STEVENSON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 88–252.

District of Columbia Court of Appeals.

Submitted July 14, 1989.
Decided July 14, 1989.*

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on July 14, 1989. Appellee's motion for publication has been granted by the court.

Philip Clarke Baten, Washington, D.C., for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before BELSON, TERRY, and FARRELL, Associate Judges.

PER CURIAM:

Appellant was found guilty by the court of driving while under the influence of alcohol (D.C.Code § 40–716(b)(1) (1986)). On appeal, he contends that he had a constitutional right to a jury trial even though the statutory penalty for the offense is insufficient to qualify for a jury trial under D.C.Code § 16–705 (1981). This contention is foreclosed by the Supreme Court's decision in *Blanton v. City of North Las Vegas*, — U.S. —, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989), and we need not consider it further.[1] His remaining contention is that the evidence was insufficient to support his conviction. We reject that contention as well.

I.

Sergeant Tommy L. McNeely, while patrolling Interstate 295 near the Blue Plains Processing Plant at about 3:20 a.m., saw two cars lined up next to each other in the roadway as if about to start a drag race. He watched as the cars took off and accelerated to a speed of more than 80 miles per hour. He was able eventually to force one car over to the side of the road; the other, driven by appellant, stopped voluntarily. McNeely ordered appellant out of the car and proceeded to issue him a ticket for speeding. As he did so, he detected a moderate odor of alcohol on appellant's breath. In response to questioning, appellant admitted that he had had a couple of beers. During this time, appellant stood leaning against the car with his arms folded, in a manner indicating to McNeely that he needed to do so to maintain a steady balance. McNeely, an 18 year police veteran who had observed up to 1,000 persons under the influence of alcohol (and had made 60–70 arrests for DUI), concluded from his observations that appellant was under the influence of alcohol. Officer Anthony Medoro arrived at the scene, also smelled a moderate amount of alcohol on appellant's breath, and confirmed Sergeant McNeely's opinion that appellant was leaning on the car to support himself. When he asked appellant to recite the alphabet, appellant did so but jumbled some letters and recited them out of order.[2] Medoro observed that appellant's eyes were slightly bloodshot and watery. As a police officer, Medoro had encountered more than 350 persons under the influence of alcohol, and he concluded that appellant was under the influence. After taking appellant to the police station, Medoro read him the police department Form 29, the Implied Consent Form. Appellant refused to consent to blood alcohol tests.

---

1. Appellant cites language in the Committee Report accompanying Bill 4–389, the Anti–Drunk Driving Act of 1982, which he says indicates that the District of Columbia Council continued to regard driving under the influence of alcohol as a "serious" offense even while it reduced the penalties for the offense to make it non-jury demandable. One can scarcely doubt that the Council continued to believe the offense to be a serious one, but the Supreme Court in *Blanton* was explicit in defining a "serious" offense for purposes of the constitutional right to a jury trial:

 A defendant [charged with an offense carrying a prison term of six months or less] is entitled to jury trial … only if he can demonstrate that *any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one.*

 109 S.Ct. at 1293 (emphasis added). In light of this plain focus on statutory penalties, we decline appellant's invitation to search the committee report or other legislative history for additional indications that the Council believed driving under the influence to be a "serious" offense.

2. Before starting the alphabet, appellant told the officer that he knew it.

In his own testimony, appellant conceded that he had drunk a couple of beers that night, alternately stating that he had done so one-half hour to 45 minutes earlier, and as early as 10:30 or 11:00 that evening (or four hours earlier).

## II.

This Court will reverse a conviction for insufficient evidence only if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *Raymond v. United States,* 396 A.2d 975, 978 (D.C.1979). As we have done before, we shall assume for present purposes that proof of impairment of driving ability is an element of the offense of driving under the influence of alcohol. *Miller v. District of Columbia,* 517 A.2d 1068 (D.C.1986); *see Washington v. District of Columbia,* 538 A.2d 1151, 1156 (D.C.1988) (noting that evidence of impairment is unnecessary for conviction for the "per se" offense of driving with .10 percent or more blood alcohol content, and emphasizing distinction between that offense and the offense of driving under the influence). Proof of impairment, however, need not be based upon the manner in which the vehicle was actually operated. *Miller, supra,* 517 A.2d at 1069. Rather, it can be established by an accumulation of evidence, *e.g.,* slurred speech, odor of alcohol on the breath, and similar circumstances. *Washington, supra,* 538 A.2d at 1151. In the present case, there are circumstances in abundance permitting a rational inference that appellant was under the influence of alcohol so as to impair his ability to drive.

 Two officers experienced in dealing with persons under the influence of alcohol detected a moderate odor of alcohol on appellant's breath. One officer noted that his eyes were slightly bloodshot and watery. Both officers observed appellant supporting himself against his car in an evident attempt to maintain his balance. We have recognized that poor performance on field sobriety tests reflects on physical coordination generally, and in turn on driving ability. *Oxholm v. District of Columbia,* 464 A.2d 113, 114 n. 2 (D.C.1983). It is no less reasonable to suppose that inability to maintain balance without external support, traceable to alcohol consumption, affects one's ability to drive safely. In addition, appellant, although knowing the alphabet, was unable to recite it without mixing up letters. He acknowledged having drunk two beers that night (wavering in his testimony of how recently). Moreover, the trial court could reasonably infer as it did that "a person who is not under the influence of something will not drag race on a highway in the District of Columbia...."

 Finally, appellant's refusal to take a blood alcohol test could properly be considered against him as evincing consciousness of guilt. *People v. Ellis,* 65 Cal.2d 529, 55 Cal.Rptr. 385, 389, 421 P.2d 393, 397 (1966). D.C.Code § 40–505(c) (1986) specifically provides, in the context of the implied consent provisions of the Anti–Drunk Driving Act, that evidence of refusal to submit to chemical testing shall be admissible in any resulting civil or criminal proceeding arising from the acts alleged. *See South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (upholding similar provision against claim of infringement of Fifth Amendment right against self-incrimination). In *Neville,* the Supreme Court found "considerable force" in the analogy between flight and suppression of evidence and refusal to submit to a blood alcohol test. *Id.* at 561, 103 S.Ct. at 921. The enactment of D.C.Code § 40–505(c) (1986) rests upon a similar legislative judgment that refusal to take the test is probative of the defendant's state of mind, and hence condition, at the time of the offense charged. The trial court, therefore, could properly take into account appellant's refusal to submit to the test "for what it is worth." *District of Columbia v. McConnell,* 464 A.2d 126, 131 (D.C. 1983). *See also District of Columbia v. Clark,* 468 A.2d 961, 963–64 (D.C.1983).

Accordingly, the judgment on appeal is

*Affirmed.*