## Case No. 15,653.

### UNITED STATES v. McARDLE.

#### [2 Sawy. 367.] 1

District Court, D. Oregon.    April 1, 1873.

SEAMEN—SHIPPING ACT—FOREIGN VESSELS—AMBIGUITIES.

1. Section 51 of the act of June 7, 1872 (17 Stat. 273), commonly called the shipping act, applies to seamen engaged on foreign vessels while in American waters.

[Followed in U S. v. Sullivan, 43 Fed. 604. Cited in Grant v. U. S., 7 C. C. A. 436, 58 Fed. 696.]

2. The title of an act cannot control plain words in the body of the statute. but taken in connection with other parts, it may assist in removing ambiguities; but the title of the act of June 7, 1872, supra, does not allude to the subject of the conduct and discipline of seamen provided for in sections 51 to 59 inclusive.

[Cited in Hahn v. Salmon, 20 Fed. 809.]

This indictment charges that the defendant [James McArdle], on February 26, 1873, being lawfully engaged as a cook upon the British ship Gemini, within the district aforesaid, did then and there "wilfully and continuously disobey the lawful commands" of the chief officer of said ship—stating the command—contrary to the statute, etc. On the trial the jury found a verdict of guilty of disobedience, but not continuous. Afterward the defendant's counsel moved in arrest of judgment, which motion was argued and submitted on March 19.

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Addison C. Gibbs, for the United States.

Cyrus Dolph, for defendant.

DEADY, District Judge. The ground of the motion is, that the facts stated in the indictment do not constitute a crime against the laws of the United States. Section 51 of the act of June 7, 1872 (17 Stat. 275), commonly called the shipping act, provides: "That when any seaman who has been lawfully engaged * * * commits any of the following offenses, he shall be liable to be punished as follows, that is to say: * * * Fourthly, for wilful disobedience to any lawful command, he shall be liable to imprisonment, etc. Fifthly, for continued wilful disobedience to any lawful commands * * * he shall be liable to imprisonment for any period not exceeding six months," etc.

Counsel for the motion maintain that this act does not apply to seamen other than those on board American vessels. In support of this position, he cites sections 47, 50. 55 and 65, and the title of the act as being incompatible with the idea that the act was intended to apply to seamen on foreign vessels, even in American waters. But it does not necessarily follow that if sections 47, 50 and 55 are inapplicable to seamen on foreign ships, section 51 should be construed to be so also. In scope and purpose they differ very much from the latter one. Sections 47 and 50 relate to the collection and disposition of the unpaid wages and effects of seamen dying in the United States, while section 51 relates solely to the misconduct of seamen. Besides, these sections 47 and 50 do not in terms exclude from their operation the wages and effects of seamen belonging to foreign ships. Like the section under consideration, their language is general and unqualified, and includes all seamen in the circumstances therein described. The subject matter—the collection and disposition of the unpaid wages and effects of seamen dying in the United States—is as much within the jurisdiction of the national government in the case of seamen belonging to foreign ships as American ones, and, so far as appears, I see no reason why these sections should be held inapplicable to either.

Section 55 relates to the disposition of seamen's wages and effects forfeited for desertion and other offenses against the act. It is also general and unqualified in its terms, and may as well apply to the wages of a seaman belonging to a foreign ship, where the act causing the forfeiture takes place within the jurisdiction of the United States, as those of any other.

But section 65 is the one principally relied upon by counsel. as showing. that the whole act, and every section of it, however general and unqualified in its terms, must be restrained to the cases of seamen on vessels belonging to the citizens of the United States. It provides:

"Sec. 65. That to avoid doubt in the con-

struction of this act, every person having the command of any ship belonging to any citizen of the United States shall, within the meaning and for the purposes of this act, be deemed and taken to be the 'master' of such ship; and that every person (apprentices excepted), who shall be employed or engaged to serve in any capacity on board the same, shall be deemed and taken to be a 'seaman' within the meaning and for the purposes of this act; and that the term 'ship' shall be taken and understood to comprehend every description of vessel navigating on any sea or channel, lake or river to which the provisions of this law may be applicable; and the term 'owner' shall be taken and understood to comprehend all the several persons, if more than one, to whom the ship shall belong."

Now the effect of all this is only to declare, in a certain class of cases, to wit, ships "belonging to any citizen of the United States," two things already well established: (1) that the person having the command of a ship, shall be deemed the master thereof; and (2) that every person employed thereon shall be deemed a seaman. But the section does not declare that the term "seamen," as used in the act, or that the act itself, shall be held to apply only to seamen serving on ships belonging to citizens of the United States, and therefore it does not affect the question under consideration.

Moreover, the definition here given of the term "ship," furnishes evidence that congress did not intend to limit the operation of the act in all respects to American ships and their crews. If such had been the intention of the law maker, the language employed would have been to this effect: the term "ship" shall be taken to comprehend every description of vessel belonging to any citizen of the United States, and not otherwise; instead of which the term is defined so as to comprehend, at least, every description of vessel, whether foreign or domestic, navigating "on any" water within the jurisdiction of the United States; for the provisions of this law must be applicable to "any sea or channel, lake or river," within the jurisdiction of the government which enacted it.

It is also insisted that the title of the act indicates that it was not the intention of congress to include seamen belonging to foreign ships within its operation. The title reads: "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States, to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen."

The title of an act cannot control plain words in the body of the statute, but, taken in connection with other parts, it may assist in removing ambiguities. U. S. v. Fisher, 2 Cranch [6 U. S.] 386. I find the latest enunciation of the general rule upon this subject laid down in Hadden v. The Collector, 5 Wall. [72 U. S.] 110, by Mr. Justice Field, as follows: "The title of an act furnishes little aid in the construction of its provisions. Originally in the English courts the title was held to be no part of the act; 'no more,' says Lord Holt, 'than the title of a book is part of the book.' Mills v. Wilkins, 6 Mod. 62. It was generally framed by the clerk of the house of parliament, where the act originated, and was intended only as a means of convenient reference. At the present day the title constitues a part of the act, but it is still considered as only a formal part; it cannot be used to extend or restrain any positive provisions contained in the body of the act. It is only when the meaning of these is doubtful that resort may be had to the title, and even then it has little weight. It is seldom the subject of special consideration by the legislature. These observations apply with special force to acts of congress. Every one who has had occasion to examine them has found the most incongruous provisions, having no reference to the matter specified in the title."

Admitting for the time being that it is doubtful whether the words "seamen," as used in section 51 should be held to include the defendant, does the title aid in solving such doubt, and how? It specifies three subjects: (1) The employment of shipping commissioners; (2) the employment and discharge of seamen; and (3) the further protection of seamen.

If in the body of the act it is doubtful, as it appears to be, whether these commissioners are only to superintend the employment and discharge of seamen engaged on ships belonging to citizens of the United States, then this plain indication in the title, of the purpose of the act in this respect, would resolve such doubt accordingly. But section 51 does not relate to the employment of seamen, but their discipline and punishment for desertion, disobedience and disorder, and therefore this specification in the title does not affect the question of what seamen this section includes.

The third specification in the title is, "the further protection of seamen." This clause does not in terms confine the operation of the act in this respect to any particular seaman, but so far as it goes, indicates that the term, except in the matter of their employment and discharge, was intended to include "seamen" engaged on any ship while within the jurisdiction of the United States.

The subject of the protection of seamen is provided for in what may be called a chapter of the act entitled "Protection of Seamen," being sections 61 to 64 inclusive. They relate to the attachment and assignment of seamen's wages, and the unlawful boarding of vessels and soliciting seamen to go on shore.

From the terms used and the nature of things, their operation is confined to ports and waters of the United States, and all their provisions are alike applicable to any seaman in an American port, without reference to the nationality of the vessel on which he is engaged; and there can be no doubt but that the best public policy of a commercial people and the comity of civilized nations demand that this should be so.

The act from section 51 to 59, inclusive of both, relates to the conduct of seamen, and so far is designated, "Discipline of Seamen." The subject is not mentioned in the title, and therefore it can have no effect in the construction of these sections. As in the case of the sections relating to the "Protection of Seamen," no discrimination is attempted to be made in the sections between seamen on account of the nationality of the vessels in which they are engaged or for any reason. Wherever the term "seamen" occurs it is used generally and without qualification.

The first of these, section 51, is the one under which this indictment is found. It relates wholly to the definition and punishment of offenses by seamen, such as desertion, disobedience, embezzlement of cargo and the like, all or any of which may be committed in an American port by seamen serving on foreign vessels as well as on American. The language of the section is plain and peremptory, and includes the case of the defendant, and unless it appears from some other provision of the act, that the word "seamen," as here used, should be construed to apply only to seamen engaged on board ships belonging to citizens of the United States, there must be judgment in pursuance of the verdict.

Every commercial nation is directly interested in maintaining discipline, and preventing desertion and disobedience among the crews of foreign vessels while in its ports. If such conduct is allowed to go unpunished, so far as they are concerned, the example will become contagious and lead to general disorder, to the injury of commerce and the country. The comity of nations requires that each one shall furnish the means of arresting and punishing any seaman guilty of these offenses while in its ports.

The argument for the defendant assumes that his case is not within the letter of the act, and cites U. S. v. Sheldon, 2 Wheat. [15 U. S.] 120, to show that a penal act ought not to receive an equitable construction so as to extend it to a case not within the correct and ordinary meaning of its language. The rule, as stated in the authority, is admitted, but it is an error to assume that the case of the defendant is not within the letter of section 51. In fact, the defendant seeks to have the act equitably construed in his favor, so as to take his case out of the plain letter of the section.

Take the section as it reads, and the de-fendant being a seaman, lawfully engaged on the ship Gemini, within the jurisdiction of this court, at the time of the commission of the willful disobedience alleged in the indictment, he is within the correct and ordinary signification of its language, and as there is nothing in the act, its title, purpose or nature to justify a narrowing construction of this language, so as to exclude from its operations the case laid in the indictment, there is no ground upon which the motion can be allowed.