UNITED STATES *v.* SULLIVAN.

SAME *v.* SCOTT.

*(Circuit Court, D. Oregon.   October 8, 1890.)*

SHIPPING—BOARDING ARRIVING VESSEL.
    Section 4606 of the Revised Statutes, providing for the punishment of any person who, without the consent of the master, goes on board an arriving vessel before she reaches her place of destination, and is moored thereat, applies to foreign vessels.

*(Syllabus by the Court.)*

In Admiralty.   Information for boarding arriving vessel.
*Franklin E. Mays* and *Edward N. Deady,* for plaintiff.
*Raleigh Scott,* for defendants.

DEADY, J.   The informations in these cases charge the defendants with the violation of section 4606 of the Revised Statutes, on August 24, 1890, by unlawfully going on board the vessel Kate F. Troop, while she was in the Columbia river, near Astoria, and about to arrive at her port of destination, to-wit, Portland, Or., and before she was. completely moored thereat.

The statute provides that:

"Every person who, not being in the United States service, and not being duly authorized by law for the purpose, goes on board of any vessel about to arrive at the place of her destination, before her actual arrival, and before she has been completely moored, without permission of the master, shall, for every such offense, be punishable by a fine of not more than two hundred dollars, and by imprisonment for not more than six months; and the master of such vessel may take any such person so going on board into custody, and deliver him up forthwith to any constable or police officer, to be by him taken before any justice of the peace, to be dealt with according to the provisions of this title." Rev. St. tit. 53.

This statute is section 62 of the act of June 7, 1872, (17 St. 262,) entitled "An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States, to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen."

In the Revised Statutes the word "vessel" is substituted for "ship," in the original.

The defendants demur to the informations on the ground:

"(1) That the same does not state facts sufficient to constitute a crime; and (2) that the court has no jurisdiction to authorize the filing of the information by the district attorney."

The cases were heard together. On the argument, the second ground of demurrer was abandoned.

In support of the first ground of demurrer, it is contended that the statute, taken in connection with section 4612, Rev. St., applies only to American vessels, of which the Troop does not appear to be one. And it is admitted by counsel that she is a British vessel.

In support of this proposition, *U. S.* v. *Minges*, 16 Fed. Rep. 657, is cited.

This case was an information under section 4601 of the Revised Statutes, taken from section 4 of the act of July 20, 1790, (1 St. 133,) entitled "An act for the government and regulation of seamen in the merchant service," for harboring a deserting seaman from a Norwegian vessel.

The court said that the section taken in connection with section 4612 (section 65 of the act of 1872) did not include a desertion from a foreign vessel, and sustained a demurrer to the information; but the court, in support of this conclusion, evidently relied on the fact that there is a treaty between the United States and Norway for the arrest and surrender of deserting seamen from the vessels of either nation in the waters of the other. Pub. Treaties, p. 740, art. 14. Section 5280 of the Revised Statutes furnishes the means for enforcing this treaty within the jurisdiction of the United States.

Section 4612 provides

—"That, in the construction of this title, (53,) every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve, in any capacity, on board the same, shall be deemed and taken to be a 'seaman;' and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this title may be applicable."

But, as I understand this section, it does not declare that the word "seaman," as used in the statute, is confined to one employed on a vessel belonging to a citizen of the United States; but rather, and only, that every person employed on such a vessel shall be considered a "seaman."

Nor does this section exclude foreign vessels from the operation of the statute, by declaring that a person in command of a vessel belonging to a citizen of the United States shall be considered the "master" thereof.

There is nothing to be inferred from either of these provisions that section 4606 does not include the boarding of a foreign vessel contrary thereto.

In *U. S.* v. *Minges, supra,* weight seems to have been given to the fact that title 53 of the Revised Statutes, in which these sections occur, is called "Merchant Seamen."

Now, merchant seamen are simply seamen in private vessels, as distinguished from seamen in the navy or public vessels. The seamen employed on private vessels of all nations are merchant seamen, and literally included in this phrase.

In *U. S.* v. *McArdle*, 2 Sawy. 367, I held, in the district court, that section 4596, (section 51 of the act of 1872, and included in title 53 of the Revised Statutes,) providing for the punishment of minor offenses committed by "seamen," lawfully engaged in the sea service, is applicable to a seaman engaged on a foreign vessel, who is guilty of "disobedience," within the waters of the United States.

Then, as now, section 4612 was relied on as qualifying the general language of the statute, "any seaman," so as to confine it to cases of seamen engaged on American vessels.

In answer to this argument, I said, and now repeat:

"The effect of all this (section 4612) is only to declare, in a certain class of cases, to-wit, ships ' belonging to any citizen of the United States,' two things already well established: (1) That a person having the command of such a ship shall be deemed the master thereof; and (2) that every person employed thereon shall be deemed a seaman. But the section does not declare that the term ' seaman' as used in the act, or that the act itself, shall be held to apply only to seamen serving on ships belonging to citizens of the United States, and therefore it does not affect the question under consideration."

But the section on which these informations are founded does not affect "seaman" as such, engaged in any service, foreign or domestic.

It provides for the punishment of any "person," be he sailor, boarding-house runner, or harbor or river pirate, who, without the authority of law, or the consent of the master, presumes to go on board of "any vessel" arriving in any water of the United States before she has reached her place of destination, her ultimate port, and been completely moored thereat.

Again, the last clause but one of section 4612 seems to be conclusive on the point that the word "vessel" as used in title 53 includes a foreign vessel, as well as a domestic one; for it declares that:

"The term ' vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this title may be applicable."

When this occurrence took place, the Troop was navigating the Columbia, a river to which the provisions of the title are applicable. Indeed, being a general statute, containing no limitations upon its operation in this respect, it is applicable to all the waters of the United States,

The evil which this section is intended to prevent and remedy is apparent, and in this district notorious. For instance, lawless persons, in the interest or employ of what may be called "sailor-mongers," get on board vessels bound for Portland as soon as they get in the Columbia river, and by the help of intoxicants, and the use of other means, often savoring of violence, get the crews ashore, and leave the vessel without help to manage or care for her. The sailor thereby loses the wages of the voyage, and is dependent on the boarding-house for the necessaries

of life, where he is kept, until sold by his captors to an outgoing vessel, at an enormous price.

Can there be any reason assigned why the legislation of a civilized nation should limit the punishment for such practices to the case of the vessels of her own citizens, and leave those of foreign nations, which come here in pursuance of treaties of amity and commerce, to take care of themselves,—with the marline-spike, it may be?

Every commercial nation is directly interested in maintaining peace and order on its navigable waters, and affording reasonable protection to foreign vessels engaged in commerce thereon. The comity of nations requires that each one shall provide means for the arrest and punishment of all persons guilty of such depredations on commerce within its waters; and I have no doubt that such was the intention of congress in the enactment of section 4606. Its language, "any vessel," includes both foreign and domestic ones; and there is nothing in the context or the subject-matter to warrant its limitation to the latter, but the contrary.

Since I commenced the examination of these cases, my attention has been attracted to the case of *U. S.* v. *Anderson*, 10 Blatchf. 226, 228, in which Mr. Justice Benedict held (1872) that this section applies to foreign vessels. On this point he said:

"Considering the general language of section 62, (section 4606, Rev. St.,) and in view of the evil sought to be remedied thereby, and of the nature of the prohibition therein contained, the section is to be considered as intended to protect foreign vessels, as well as vessels of the United States; and the fact that the vessel boarded by the prisoner was a foreign vessel is, therefore, of no avail as a defense in a prosecution under this section."

In conclusion he said:

"I have thought proper to submit the questions raised to the consideration of the circuit judge, (Mr. Justice Blatchford,) and he concurs with me in the opinion that the rulings stated are correct."

The demurrers are overruled.