**UNITED STATES of America**

**v.**

**GREENPEACE, INC.**

**No. 03–20577–CR–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

April 15, 2004.

1254

Jane Wollner Moscowitz, Moscowitz Moscowitz & Magolnick, John Michael Hogan, Dana Lynn Choi, Holland & Knight, Miami, FL, Thomas W. Wetterer, David Halperin, Washington, DC, for Defendant.

Ralf Gunars Brookes, Cape Coral, FL, for Interested Party.

## ORDER ON PENDING MOTIONS

JORDAN, District Judge.

On the afternoon of April 12, 2002, several miles outside the Port of Miami, various members of Greenpeace, Inc., a worldwide environmental organization, boarded the M/V APL Jade, a cargo vessel which was believed to be bringing illegally logged mahogany from Brazil into the United States. The Greenpeace members, once on board, intended to unfurl a banner which urged President Bush to stop illegal logging, but they were taken into custody before they could do so.

In May of 2002, the government charged several Greenpeace members by information with the commission of a misdemeanor in violation of 18 U.S.C. § 2279.[1] Those

---

1. In pertinent part, § 2279 provides as follows:

Whoever, not being in the United States service, and not being duly authorized by law for the purpose, goes on board any

individuals pled guilty or no contest, and I sentenced them to time served plus fines ranging from $100 to $500. *See United States v. Dombowsky et al.*, No. 02–20470–Cr–Jordan. In July of 2003, the government obtained a grand jury indictment charging Greenpeace with violating § 2279, and subsequently obtained a superseding indictment adding a charge of conspiracy to violate § 2279, in violation of 18 U.S.C. § 371.

This order addresses Greenpeace's motion to dismiss the indictment, Greenpeace's motion for a jury trial, and the government's motion for a non-jury trial. I held a hearing on these and other motions on December 12, 2003.

## I. THE MOTION TO DISMISS

Greenpeace has moved to dismiss the superseding indictment, arguing that § 2279 does not apply to the conduct alleged in the indictment and that § 2279 is impermissibly vague. For the reasons which follow, the motion to dismiss is denied in part and deferred in part.

 In analyzing Greenpeace's motion, I am limited to the allegations contained within the four corners of the indictment, and must read those allegations in the light most favorable to the government. *See, e.g., United States v. Plummer*, 221 F.3d 1298, 1302 (11th Cir.2000); *United States v. deVegter*, 198 F.3d 1324, 1327 (11th Cir.1999). To the extent that Greenpeace is challenging the allegations of the indictment, any contested evidentiary matters which form the basis of the motion are not amenable to pretrial disposition. *See United States v. Knox*, 396

U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir.1992). There is, however, one exception. At the hearing on the pending motions, the government stipulated that I could consider, or take judicial notice of, one fact not alleged in the indictment. That fact is that the boarding of the APL Jade took place 3.24 miles off the coast of Miami Beach.[2]

### A. THE SCOPE OF § 2279

Congress enacted the predecessor to § 2279 in 1872. *See* Act of June 7, 1872, § 6, Rev. Stat. § 4606 (then codified at 46 U.S.C. § 708). Since then, there have only been two reported cases discussing § 2279 or its predecessor. Those cases are over 100 years old, and do not address the issues raised here by Greenpeace. *See United States v. Sullivan*, 43 F. 602, 602–05 (C.C.D.Or.1890) (statute applies to foreign vessels); *United States v. Anderson*, 24 F.Cas. 812, 812 (C.C.S.D.N.Y.1872) (government need not prove that the defendant was not in the United States service or was not authorized by law to go on board). *Sullivan* does, however, discuss the intended purpose of § 2279:

The evil which this section is intended to prevent and remedy is apparent, and in this district notorious. For instance, lawless persons, in the interest or employ of what may be called 'sailor-mongers,' get on board vessels bound for Portland as soon as they get in the Columbia river, and by the help of intoxicants, and the use of other means, often savoring of violence, get the crews

vessel about to arrive at the place of her destination, before her actual arrival, and before she has been completely moored, shall be fined under this title or imprisoned not more than six months, or both.

**2.** Greenpeace asserts in its motion that the APL Jade was between 4 and 5 miles offshore.

The actual location of the vessel will, of course, be litigated and determined at trial, and I do not mean to engage in any fact-finding in this order. For purposes of a motion to dismiss, however, I can take judicial notice of matters outside the indictment only to the extent that both parties allow me to.

ashore, and leave the vessel without help to manage or care for her. The sailor thereby loses the wages of the voyage, and is dependent on the boarding-house for the necessaries of life, where he is kept, until sold by his captors to an outgoing vessel, at an enormous price. 43 F. at 604–05.

▮▮▮▮▮ Greenpeace's first argument is that § 2279 does not apply to its alleged conduct because a vessel 3 miles offshore is not "about to arrive at the place of her destination." Words in a statute are to be given their "ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import," *Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (internal quotation marks omitted), and it is an accepted practice for courts to look to dictionaries for definitions, as in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 n. 5, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). According to Greenpeace, the phrase "about to" means "on the point or verge of," *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 5 (1976), and connotes imminence and immediacy. I agree with Greenpeace's reading, which is supported by dictionary definitions and the few cases interpreting the phrase. *See, e.g., E.E.O.C. v. Swift Transportation Co.,* 120 F.Supp.2d 982, 992 (D.Kan.2000) (interpreting phrase "about to" in 29 U.S.C. § 215(a)(3) to mean "on the point or verge of" or "ready or prepared to do something"); *United States v. 200 Watches,* 66 F.Supp. 228, 231 (S.D.N.Y. 1946) (same ruling with respect to phrase "about to" in former 22 U.S.C. § 401). I also think Greenpeace is right in arguing that the phrase "before she has been com-

pletely moored" suggests some measure of physical proximity to land for the statute to be applicable. But I do not concur with Greenpeace that this means, as a matter of law, that § 2279 is inapplicable when the subject vessel is 3.24 miles from shore. *See Anderson,* 24 F.Cas. at 812 (statute was violated by boarding of inbound vessel which was temporarily anchored in the Bay of New York and which had not yet arrived at pier of destination in New York City).[3]

There may be a case where the distance from shore or port is so removed from the act of arrival that the statute will not apply, but I cannot say, on this limited record, that this is one of them. The reason is that there are many unknown facts which might bear on the question of whether the APL Jade was "about to arrive at the place of her destination" when she was boarded by the Greenpeace members. What was the APL Jade doing at the time of the boarding? What are the boundaries of the Port of Miami and of the channel leading into it? Where exactly in the Port of Miami was the APL Jade supposed to dock? How far away from the final docking place was the APL Jade when it was boarded? At what distance are pilots generally sent to guide vessels of this size into the Port of Miami? At what distance was the APL Jade when the pilot actually arrived? Were tugboats going to be used, and if so, when? How far was the APL Jade from the channel of the Port of Miami at the time of boarding? These questions can only be answered at trial.

**B. THE VAGUENESS CHALLENGE TO § 2279**

Greenpeace's second challenge to the indictment is that § 2279 is unconstitutional-

---

**3.** To the extent that *Sullivan,* 43 F. at 604, holds that the statute covers the boarding of any vessel on "all the waters of the United States," regardless of where the vessel is located in relation to its destination, I disagree

with that decision. Such a broad construction of the statute would obliterate and render meaningless the critical and limiting phrase "about to arrive at the place of her destination."

ly vague. Specifically, Greenpeace contends that the statute is subject to facial attack because it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits[.]" *City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion concluding that ordinance which defined loitering as "remain[ing] in any one place with no apparent purpose" was unconstitutionally vague and therefore facially invalid). *See generally Horton v. City of St. Augustine,* 272 F.3d 1318, 1329–30 (11th Cir.2001) (applying *Morales* to street performance ordinance).

■ That § 2279 reaches conduct other than so-called "sailor-mongering"—the type of conduct at which the statute was apparently directed—does not, by itself, create a constitutional infirmity. "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (internal quotation marks and citations omitted). Neither does the executive branch's failure to use or enforce the statute for over a century:

> The failure of the executive branch to enforce the law does not result in its modification or repeal.... Cases of hardship are put where criminal laws so long in disuse as to be no longer known to exist are enforced against innocent parties. But that condition does not bear on the continuing validity of the law; it is only an ameliorating factor in enforcement.

*District of Columbia v. John R. Thompson Co.,* 346 U.S. 100, 113–14, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953) (upholding use of 1872 law, which prohibited the refusal of service on the basis of a person's color, in 1952 criminal prosecution despite lack of enforcement over the years). *Cf.* Corey Chivers, *Desuetude, Due Process, and the Scarlet Letter Revisited,* 1992 Utah L. Rev. 449, 451 (1992) (proposing that when a statute has fallen into disuse or desuetude, courts "could refuse to enforce [it] in those particular cases where enforcement would create identifiable failures of due process").

■ Turning to Greenpeace's argument, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. In determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which a defendant is charged." *United States v. National Dairy Products Corp.,* 372 U.S. 29, 33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (citations omitted). Where, as here, a statute does not target speech or implicate First Amendment concerns, a vagueness challenge may only be made as applied to the alleged conduct. *See, e.g., United States v. Hasner,* 340 F.3d 1261, 1269 (11th Cir.2003). *Cf. Virginia v. Hicks,* 539 U.S. 113, 123 S.Ct. 2191, 2199, 156 L.Ed.2d 148 (2003) ("Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).").

■ The question, then, is whether § 2279 is vague as applied to the conduct alleged in the indictment. On this record, which, as noted earlier, is devoid of many relevant facts, I cannot answer this question. Accordingly, Greenpeace's void-for-vagueness challenge will be determined at trial, keeping in mind the rule of lenity, which "ensures fair warning by ... resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."

*United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

 I would be remiss, however, if I did not tell the government that I have concerns about § 2279, even in an as-applied setting. First, "[t]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law," *Morales*, 527 U.S. at 58, 119 S.Ct. 1849, and it is not at all apparent that this requirement is satisfied by § 2279, as the statute does not define the critical phrase "about to arrive at the place of her destination." The government's contention that the phrase simply "means what it says" is of no help at all, and may buttress Greenpeace's argument that fair notice is lacking. It is not a good sign when the government resorts to defining a phrase by repeating the phrase itself. Second, there is apparently no *mens rea* element in § 2279, and that is an important factor in the constitutional void-for-vagueness calculus. *See Hasner*, 340 F.3d at 1269.[4] Third, as the government has noted in one of its memoranda, there is no longer a consent exception (or affirmative defense) under § 2279. This potentially means that if a vessel's master allows a friend of the owner—who is not in the "United States service" or is not or "duly authorized by law" to board when the vessel is "about to arrive at the place of her destination"—that person—no matter what his purpose for being on the vessel or the lack of disruption caused by his presence—has violated the statute. This is not dispositive, of course, because this is an as-applied vagueness challenge, but it not insignificant either. Fourth, although a federal court has the power, and duty, to narrowly construe a federal statute to avoid constitutional problems, it can do so only if such a construction is "fairly possible." *Boos v. Barry*, 485 U.S. 312, 331, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). At the last hearing, the government had, it is fair to say, a difficult time articulating definitions for the "about to arrive" language. When it was forced to define the phrase, it came up with various alternatives: (1) within the customs waters (i.e., within 12 miles of shore) and within the shipping channel; (2) within the customs waters on course to enter the shipping channel which terminates at the port; or (3) an inbound ship within a "reasonable" distance of the port it is destined for. The mere fact that these are all possible constructions of the statutory language—with no indication to a reasonable person as to which of them governs—gives credence to the vagueness claim. Fifth, the government hurts its position on the vagueness issue by citing approvingly in one of its memoranda to *Sullivan*, 43 F. at 602–04, a case which upheld an information charging a violation of § 2279's predecessor when the vessel was about 50 miles from its intended destination.[5] If, as the government posits, § 2279 is so broad as to allow a prosecution under such facts, then the statute has no real meaning, and Greenpeace's vagueness claim looks like a winner.

---

4. The government's position on whether § 2279 is a strict liability statute is unclear. The government has, for example, provided notice under Rule 404(b) that it will seek to introduce evidence of Greenpeace's violation of a safety zone near Vandenberg Air Force Base on July 14, 2001, and the ensuing consent decree and judgment. Given that evidence of other wrongs is used to show matters such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," maybe the government believes that there is a *mens rea* component to § 2279.

5. *Sullivan* does not say that the distance from Portland to Astoria is 50 miles, but I presume the government has determined the distance, and I accept its representation.

The government also suggests that the "about to arrive" language be interpreted by reference to a Florida statute requiring vessels to use pilots when entering or leaving ports. *See* Fla. Stat. § 310.141. That suggestion, however, is wholly unpersuasive.

 It is generally true that a federal statute is not rendered unconstitutionally vague merely because it incorporates state law by reference for the purpose of defining illegal conduct. *See, e.g., United States v. Iverson,* 162 F.3d 1015, 1021 (9th Cir.1998); *United States v. Tripp,* 782 F.2d 38, 42 (6th Cir.1986). The problem here is that § 2279 does not reference state law in any way, and "federal criminal statutes should not, in the absence of express legislative authorization, be interpreted according to diverse state laws." *United States v. McClain,* 545 F.2d 988, 1001–02 n. 30 (5th Cir.1977). One of the purposes of this rule of construction is to prevent federal laws from having different meanings or applications in different states, unless Congress expressly says otherwise. *See Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) ("the "general assumption" is that, "in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on state law") (internal quotation marks and citation omitted); *Jerome v. United States,* 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640 (1943) (same). In sum, it would be improper to define the boundaries of § 2279 by incorporating a Florida law which is not mentioned in the statute's text.

Even if § 310.41 could be considered as a point of reference, it is not directly on point. The statute says only that pilots must be on board to direct the movements of a vessel "when it is entering or leaving ports of this state." The phrase "about to arrive" is not the same as the phrase "entering or leaving ports," and is in fact less precise. In other words, resort to § 310.41 does not alleviate the potential vagueness problem.

## III. THE JURY TRIAL ISSUE

Greenpeace seeks a jury trial under the Constitution as a matter of right. Alternatively, it requests a jury trial as a matter of judicial discretion. The government, on the other hand, wants a bench trial, and argues that I have no discretion to empanel a jury.

### A. THE CONSTITUTIONAL GUARANTEES TO A JURY TRIAL

 The Constitution mentions the right to a jury trial in criminal cases in Art. III, § 2, cl. 3: "The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury[.]" The Bill of Rights addresses the right to trial by jury in criminal cases in the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" The Supreme Court has held that, under these constitutional provisions, "petty offenses triable at common law without a jury may be tried without a jury in federal court[.]" *Ex Parte Quirin,* 317 U.S. 1, 39, 63 S.Ct. 1, 87 L.Ed. 3 (1942).

There are two charges in this case—an alleged conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 2279, and an alleged violation of § 2279. When the object of a § 371 conspiracy is a misdemeanor violation, § 371 provides that the "punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." Thus, § 2279 determines the punishment available for both of the charges pending against Greenpeace.

■ The punishment for an individual under § 2279 is imprisonment for up to six months and a fine, thereby making the statute a Class B misdemeanor. *See* 18 U.S.C. § 3559(a)(8). For a Class B misdemeanor, an organization like Greenpeace can be given up to five years' probation (with various possible conditions), and can be fined up to $10,000. *See* 18 U.S.C. § 3561(a), (c)(2); 18 U.S.C. § 3571(c)(6). The Sentencing Guidelines do not apply to Class B misdemeanors. *See United States v. Chavez,* 204 F.3d 1305, 1310 (11th Cir. 2000).

■ A corporation is not entitled to "purely personal guarantees" of the Constitution whose "historic function...has been limited to the protection of individuals." *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 779 n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (internal quotation marks and citations omitted). The Supreme Court has not definitively addressed whether the right to a jury trial in criminal cases protects corporations as well as individuals, preferring to leave the question open in *Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), and neither has the Eleventh Circuit. Like the parties, and consistent with those courts which have addressed the issue—albeit without much analysis—I will assume that Greenpeace, like an individual, is entitled to the jury trial protections of the Constitution and the Bill of Rights. *See United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 663–65 (2nd Cir.1989); *United States v. Troxler Hosiery Co.,* 681 F.2d 934, 935 n. 1 (4th Cir.1982); *United States v. R.L. Polk and Co.,* 438 F.2d 377, 379 (6th Cir.1971). *But see* Alan Adlestein, *A Corporation's Right to a Jury Trial Under the Sixth Amendment,* 27 U.C. DAVIS L. REV. 375, 449–58 (1994) (noting problems in articulating a "seriousness" test for corporations or other entities, and arguing that a corporation, which is subject to fines and probation, but not imprisonment, is not entitled to a criminal jury trial unless the legislature so provides).

■ In this case, borrowing the standard articulated by the Supreme Court for deciding when an individual has a constitutional right to a jury trial—as the parties have done—I conclude that Greenpeace is not entitled to a jury trial under Article III, § 2, cl. 3, or the Sixth Amendment. A criminal offense providing for a maximum prison term of six months or less is presumptively petty, and in such cases a defendant is not entitled to a jury trial unless additional statutory penalties, viewed in conjunction with the authorized prison term, are so severe that they reflect a legislative determination that the offense is "serious." *See, e.g., Blanton v. City of North Las Vegas,* 489 U.S. 538, 543, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). The fact that the two charges against Greenpeace, if lodged against an individual, would have an aggregate prison term exceeding six months, does not trigger a right to a jury trial. *See Lewis v. United States,* 518 U.S. 322, 327, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) ("The fact that the petitioner was charged with two counts of a petty offense does not revise the legislative judgment as to the gravity of that particular offense, nor does it transform the petty offense into a serious one, to which the jury trial right would apply").

Moving on to the other sanctions faced by Greenpeace, the maximum $10,000 fine on each charge does not make the offenses severe. *See United States v. Unterburger,* 97 F.3d 1413, 1415 (11th Cir.1996) (maximum penalty of six months' imprisonment and fine of $10,000 are not "sufficiently severe" to entitle defendants accused of physical obstruction of abortion clinic to a jury trial). *See also Twentieth Century Fox,* 882 F.2d at 663–65 (holding that corporation is constitutionally entitled to a

jury trial if it faces a fine of $100,000 or more, and that if the maximum fine is less a court must look at the impact the fine will have on the corporation).[6] Similarly, the probation alternative for an organization like Greenpeace does not render the § 2279 offenses "serious." *See United States v. Nachtigal*, 507 U.S. 1, 3–5, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) (probation alternative of six-year maximum term with discretionary attendant conditions (including restitution and house arrest with telephonic or electronic monitoring) is not sufficiently severe to overcome the *Blanton* presumption); *Chavez*, 204 F.3d at 1311–14 (conditions of probation (i.e., restitution and supervised release) and collateral consequence of conviction (i.e., defendant's loss of right to bear arms) did not render a presumptively petty crime sufficiently serious to entitle defendant to jury trial).

 Insofar as Greenpeace argues that the conditions of probation in this case could threaten the organization's very existence and unlawfully limit its exercise of free speech, thereby rendering the crime "serious" for Sixth Amendment purposes, I disagree. Greenpeace is a tax-exempt non-profit advocacy corporation under the Internal Revenue Code. *See* 26 U.S.C. § 501(c)(4). This means that Greenpeace does not have to pay taxes, but any donations to it are not tax-deductible. *See Federal Electiom Commission v. Beaumont*, 539 U.S. 146, 123 S.Ct. 2200, 2204 n. 1, 156 L.Ed.2d 179 (2003) (donations to § 501( c)(4) entities are not tax-deductible). Should there be a guilty verdict in this case, the IRS could decide to penalize Greenpeace by revoking its tax-exempt status, *see* IRS Rev. Rul. 75–384 (1975), but such possible adverse administrative

action is legally no different than an individual's potential loss of the ability to carry a firearm, a collateral consequence which does not transform an otherwise petty offense into a "serious" one. *See Chavez*, 204 F.3d at 1311–14. Moreover, Greenpeace's argument, if accepted, would mean that any non-profit tax-exempt corporation facing criminal charges, no matter how petty the offenses charged, would be constitutionally entitled to a jury trial because of the possible adverse tax consequences. I have found no authority to support such a result.

Greenpeace further points to the possibility that if it is convicted it the government may have access to its membership lists or other confidential information. This fear is, I think, unfounded. Should there be a conviction, and should a term of probation be imposed, *see* 18 U.S.C. § 3551( c) (organization found guilty of an offense shall be sentenced to a term of probation "or" a fine), the government will not be automatically entitled to such information. First, government access to a corporation's books, records, and membership lists is not one of the mandatory or discretionary conditions of probation under 18 U.S.C. § 3563. Second, even if I were to consider the Sentencing Guidelines— which are inapplicable to Class B misdemeanors—persuasive to frame appropriate conditions of probation for Greenpeace, access to business records is not required as a condition of probation under USSG § 8D1.3 (conditions of probation for organizations), and an examination of books and records is permitted, but not required, under USSG § 8D1.4( c)(4) (policy statement). Third, even if I should conclude that some examination of Greenpeace's records is warranted, I would certainly

---

6. No court has followed the Second Circuit's arbitrary setting of a $100,000 constitutional floor, *see* Adlestein, *A Corporation's Right to a Jury Trial*, 27 U.C. Davis L. Rev. at 437, and I only cite the case here to demonstrate that a $10,000 statutory fine is not enough to compel a jury trial.

impose limitations on any disclosure requirements consistent with *N.A.A.C.P. v. Alabama ex rel. Patterson,* 357 U.S. 449, 464–466, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (advocacy organization does not have to turn over membership lists to the government where such disclosure would have a deterrent effect on the right of the organization's members to associate).

### B. JUDICIAL DISCRETION TO PROVIDE A JURY TRIAL

Greenpeace alternatively asks for a jury trial as a matter of judicial discretion. There is some authority for this request. *See United States v. Beard,* 313 F.Supp. 844, 845 (D.Minn.1970) (granting jury trial with various conditions, as discretionary matter, to large group of Vietnam war protestors charged with "petty" offenses). Significantly, Justice Stewart, dissenting in *Ross v. Bernhard,* 396 U.S. 531, 550, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), a case involving the Seventh Amendment right to jury trial, said that "[n]othing in the Constitution ... precludes [a] judge from granting a jury trial as a matter of discretion." The government believes that I do not have any discretion to grant a jury trial if one is not constitutionally mandated, but it has not cited any authority whatsoever to support its position. To the extent that the government says that any cases decided before *Blanton* are no longer persuasive on the issue of judicial discretion, that argument does not carry the day. *Blanton* is a Sixth Amendment case, and says nothing about whether. a court has discretion to provide a defendant with a jury trial when the Constitution does not so require.

■ There is an old Fifth Circuit case which appears to hold that, even for petty offenses where the Sixth Amendment does not mandate trial by jury, a court may empanel a jury as long as Congress has not decreed that such offenses can be tried without a jury. *See Smith v. United*

*States,* 128 F.2d 990, 991–92 (5th Cir.1942). Congress has enacted legislation which makes a Class B misdemeanor like § 2279 a petty offense, and which allows (but does not require) magistrate judges to try petty offenses. *See* 18 U.S.C. § 19 (Class B misdemeanor is a petty offense); 18 U.S.C. § 3401(b) (magistrate judges may try petty offenses). Similarly, in this district magistrate judges may (but are not required to) try misdemeanor cases, and may try them with a jury if (1) the defendant requests a jury and (2) the defendant is entitled to a jury trial under the Constitution or laws of the United States. *See* Local Rules, Magistrate Rule 1(b)(3). As far as I can tell, there is no statute, rule, or precedent which prohibits a jury trial absent a constitutional requirement. I therefore conclude, consistent with *Beard* and *Smith,* and Justice Stewart's statement in *Ross,* that I have discretion to empanel a jury even where the Constitution does not require it.

■ Exercising my discretion, I choose to grant Greenpeace a jury trial. From the early days of our republic, the jury has been seen as a critical safeguard in the criminal process. *See, e.g.,* ALEXANDER HAMILTON, THE FEDERALIST 83, at 602 (Franklin Library Edition 1977) ("The friends and adversaries of the plan of the convention, if they agree upon nothing else, concur at least in the value they set upon the trial by jury: Or if there is any difference between them, it consists of this; the former regard it as valuable safeguard to liberty, the latter represent it as the very palladium of free government."); BRUCE FROHEN, THE ANTI-FEDERALISTS: SELECTED WRITINGS AND SPEECHES xviii (Regnery Publishing 1999) (foreword by Joseph Sobran: "The common law dictated adherence to set, customary procedures, one of the most prominent being trials in the hands of juries of 'the vici-

nage' or immediate surrounding area. Americans considered these juries vital to free government[.]"); JOSEPH STORY, A FAMILIAR EXPOSITION OF THE CONSTITUTION OF THE UNITED STATES § 385, at 278 (Regnery Gateway Edition 1986 [originally published in 1859] ) ("The great object of a trial by jury, in criminal cases, is to guard against a spirit of oppression and tyranny, on the part of rulers, and against a spirit of violence and vindictiveness, on the part of the people."). Juries are not perfect, but neither are judges—even those with life tenure—and juries, because of their nature, better embody and represent the judgment of the community. In the words of the Supreme court, "trial by jury in criminal cases is fundamental to the American scheme of justice." *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

This case is, to put it mildly, unusual, and would benefit from a jury's collective decision-making. First, it involves a statute which—aside from the charges against the individual Greenpeace members for boarding or attempting to board the APL Jade—has been gathering dust for over a century. Though § 2279's lack of use does not prevent the government from going forward against Greenpeace, it does point to how uncommon such a prosecution is. Second, the indictment is a rare—and maybe unprecedented—prosecution of an advocacy organization for conduct having to do with the exposition of the organization's message. As late as 1998, a high-level Department of Justice official told Congress that the DOJ does not "go after [advocacy] groups," and instead prosecutes "people who commit criminal conduct." *See* Testimony of Frank Marine, Acting Chief of the Organized Crime and Racketeering Section of the Criminal Division of the Department of Justice, Hearing Before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 105th Cong.,

2d Sess. (1998), at 36. This case may, therefore, signal a change in DOJ policy. Third, the prosecution has generated charges that the indictment of Greenpeace is politically motivated due to the organization's criticism of President Bush's environmental policies. *See, e.g.,* Catherine Wilson, *Opponents See Greenpeace Indictment as a Threat to Dissent,* Associated Press, Jan. 4, 2004, at 1–2; Ann O'Neill, *Greenpeace Case Called Test for Right to Dissent,* South Florida Sun–Sentinel, Dec.21, 2003, at B1; Nicholas Horrock, *Ashocroft v. Greenpeace,* United Press International, Nov. 27, 2003, at 2–3; Andrew Liptak, *Typical Greenpeace Protest Leads to an Unusual Prosecution,* N.Y. Times, Oct. 11, 2003, at A9. I do not mean to pass upon, much less endorse, any such claims, but note them only to highlight that this is not a run-of-the-mill misdemeanor case. Fourth, the government apparently does not view this case as a typical either. As noted above, § 2279 carries a maximum term of imprisonment of six months. Generally, a crime punishable by less than a year in prison, unless hard labor is authorized, is not an "infamous crime" requiring a grand jury indictment under the Fifth Amendment. *See, e.g., Green v. United States,* 356 U.S. 165, 183, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958) (an "infamous crime" is one punishable by more than a year in prison); *United States v. Moreland,* 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700, (1922) (offense punishable by imprisonment at hard labor, even if for less than a year, is an "infamous crime" requiring indictment by a grand jury); *United States v. Linares,* 921 F.2d 841, 844 (9th Cir.1990) (misdemeanor narcotics offense punishable by up to a year in prison could be charged by information); *United States v. Russell,* 585 F.2d 368, 370 (8th Cir.1978) (same as to misdemeanor tax offense). The government could easily have filed an information against Greenpeace, as it did against the

individual Greenpeace members. *See* Fed. R.Crim.P. 7(a)(2) & 58(b)(1). That it chose to proceed by indictment suggests the unique nature of the case. Fifth, although not sufficient to transform this case into a "serious" one for Sixth Amendment purposes, the possible effects of a conviction on Greenpeace point in favor of providing it with the jury trial it requests. Sixth, there is something to be said for viewing the jury as a function (or consequence) of the right to self-governance, and I cannot see anything wrong with having members of the community determine whether the government can prove the charges against Greenpeace beyond a reasonable doubt. *See, e.g.,* ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 260 (University of Chicago Press 2000) ("The genuine sanction of political laws is ... found in the penal laws, and if the sanction is lacking, the law sooner or later loses its force. Therefore, the man who judges the *criminal* is really the master of society. Now, the institution of the jury places the people themselves, or at least one class of citizens, on the judge's bench. The institution of the jury, therefore, really puts the direction of society into the hands of the people or of this class."); AKHIL REED AMAR, THE BILL OF RIGHTS 97 (Yale University Press 1998) ("The jury summed up—indeed embodied—the ideals of populism, federalism, and civic virtue that were the essence of the original Bill of Rights.").

The government's real fear is that if a jury is empaneled, Greenpeace will try to divert attention from whether it violated § 2279 and will endeavor to obtain a not guilty verdict through nullification. Greenpeace has, in fact, submitted a proposed jury instruction on the defense of justification (Greennpeace calls it necessity) which focuses, in part, on the alleged failure of the Bush administration to enforce laws prohibiting the importation of illegally logged mahogany from Brazil. As explained below, I think the government's fear is unfounded, and does not call for exercising discretion against a jury trial.

 The Supreme Court has left open whether a justification defense (sometimes referred to as a necessity defense) should be allowed where not specifically recognized by statute. *See United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 490–91, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001). Not having heard a proffer of the evidence Greenpeace intends to introduce, I am not prepared at this juncture to preclude a justification defense. Such a defense, however, will likely be very difficult to establish on these facts. Greenpeace must, among other things, show that there was "no reasonable alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm," *United States v. Montgomery,* 772 F.2d 733, 736 (11th Cir.1985), and the federal courts have uniformly rejected justification claims in civil disobedience cases where the defendants contend that their illegal activity is justified because the normal political processes are ineffective. *See, e.g., United States v. Ayala,* 289 F.3d 16, 26 (1st Cir.2002) (protesters of bombing exercises on Vieques who illegally entered naval installation); *Montgomery,* 772 F.2d at 736 (anti-nuclear protesters who entered government defense plant, hammered and poured blood on conventional and nuclear missile launchers, hung banners, and distributed pictures); *United States v. Quilty,* 741 F.2d 1031, 1033–34 (7th Cir.1984) (anti-nuclear demonstrators who entered military property without permission after issuance of bar order); *United States v. Seward,* 687 F.2d 1270, 1275–76 (10th Cir.1982) (*en banc*) (demonstrators who trespassed on nuclear plant site); *United States v. Berrigan,* 417 F.2d 1002, 1008–09 (4th Cir.1969) (Vietnam war protesters who destroyed government property and mutilated selec-

tive service documents). The Ninth Circuit has gone so far as to hold that a justification defense—which it believes to be utilitarian in nature—is unavailable as a matter of law in cases of indirect civil disobedience—i.e., in cases where the defendant violates a "law that is not, itself, the object of the protest." *United States v. Schoon*, 971 F.2d 193, 195–96 (9th Cir. 1991) (denying defense to defendants who, in protest of United States involvement in El Salvador, entered IRS office, splashed simulated blood, and failed to disperse when ordered to do so).

Some commentators have criticized the federal courts for engaging in a formalistic analysis of the justification defense in civil disobedience cases, and have called for judicial examination of the policies and theories underlying dissent in a democratic society. *See, e.g.,* Steven Bauer & Peter Eckerstrom, *The State Made Me Do It: The Applicability of the Necessity Defense to Civil Disobedience,* 39 STANFORD L. REV. 1173, 1178–88 (1987). I am, of course, bound to follow the Eleventh Circuit's decision in *Montgomery* on the contours of the defense of justification. But if I had to look more deeply into the concept of civil disobedience, and decide as a matter of policy whether a justification defense is appropriate, I would not make the justification defense easier to establish. I generally agree with social contract theorists who posit that, in the long run, those who disobey the law to protest a law or policy they deem to be unjust or unfair will risk undermining the legitimacy and clarity of their actions by pleading a justification defense and evading liability. *See, e.g.,* JOHN RAWLS, A THEORY OF JUSTICE 322 (Belknap Press Rev. Ed.1999) ("Civil disobedience is nonviolent for another reason. It expresses disobedience to law within the limits of fidelity to the law, although it is at the outer edge thereof. The law is broken, but fidelity to law is expressed by the public and nonviolent nature of the act,

by the willingness to accept the legal consequences of one's conduct."); Charles Fried, *Moral Causation,* 77 HARVARD L. REV. 1258, 1269 (1964) ("The demonstrator's willingness to pay the penalty shows that his protest does not arise from a mere calculation of advantages. Thus he can afford the implication that others may disobey his laws if they like him are willing to pay, for it his part of his position that his opponents' position has less (or no) moral force behind it, so that his opponents would be unwilling to support that position at the same cost that he, the demonstrator, gladly pays. This is a gamble, to be sure, but civil disobedience is a risky, maybe a desperate course.").

## IV. CONCLUSION

Greenpeace is not entitled to dismissal of the indictment at this time, and its void-for-vagueness challenge will be determined at trial. Greenpeace is also not constitutionally entitled to a jury trial, but will get a jury as a matter of judicial discretion.